RYAN POWERS, ESQ. (CA Bar No. 291784)
5807 Fayette Street
Los Angeles, CA 90042
Telephone: (323) 487-0383
Fax: (323) 487-0384
ryan@ryanpowerslaw.com

*Attorney for Plaintiffs*
SUZANNE PERRY and LOVE SPIRALS DOWNWARDS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE PERRY, an individual, LOVE SPIRALS DOWNWARDS, a California General Partnership<br><br>Plaintiff,<br><br>vs.<br><br>RYAN LUM, an individual<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>**(1) DECLARATORY RELIEF (COPYRIGHT OWNERSHIP)**<br>**(2) BREACH OF FIDUCIARY DUTY**<br>**(3) EQUITABLE ACCOUNTING**<br>**(4) DECLARATORY RELIEF (TRADEMARK OWNERSHIP)**<br>**(5) FRAUD (TRADEMARK REGISTRATION)**<br>**(6) UNJUST ENRICHMENT**<br>**(7) UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §17200)**<br><br>**JURY TRIAL DEMANDED** |

1

COMPLAINT                                                          CASE NO. _____

Plaintiffs Suzanne Perry ("Perry") and Love Spirals Downwards ("LSD") (collectively, "Plaintiffs"), through her undersigned counsel, hereby brings this Complaint against Ryan Lum ("Defendant" or the "Lum") for damages, injunctive relief, and declaratory relief.  Plaintiff alleges, based on personal knowledge as to all facts known to her, and on information and belief as to others, as follows:

## I.     PRELIMINARY STATEMENT

1.     Perry and Lum are the founding and sole members of the critically acclaimed recording artist and band Love Spirals Downwards (also the "Band"), which was founded in or about 1991.

2.     Perry and Lum gave interviews together as the band as early as 1992 and signed a recording agreement with recording label Projekt in 1992. The Band went on to release five albums on Projekt: (1) *Idylls* (1992), (2) *Ardor* (1994), (3) *Ever* (1996), (4) *Flux* (1998), (5) *Temporal* (2000), one EP "*Sideways Forest*" in 1996. A written agreement in 1995 for *Ardor* in 1995 lists both Lum and Perry as signatories on behalf of the Band. A live album of performances from 1998 was later released under the name *Live*. (*Idyll, Ardor, Ever, Flux, Temporal, Sideways Forest*, and *Live* shall be referred to collectively as the "Albums")

3.     The original liner notes in all Albums lists both Lum and Perry as writers and members of the Band, with Lum playing the instruments and Perry singing and writing the lyrics.

4.     Every live performance of the Band from inception through 1999 (when they ceased performing) featured the duo of Perry and Lum.

5.     In or around 1999, Love Spirals Downwards stopped recording new music and ceased live performances; however, the Band's recordings continued to be exploited and distributed.

6.     Years later, on February 4, 2026, Lum individually filed a trademark application for "Love Spirals Downwards" listing him as sole owner. Counsel for Perry notified Lum that this filing was erroneous as Perry had, since inception, been

COMPLAINT                                                              CASE NO. _____

a member of the Band and controlled the quality of the goods and services (i.e., recordings) that were released under that mark, and had not permitted any other third parties to use the name or release recordings under the mark.

7.    Perry has opposed Lum's TM registration.

8.    Additionally, Lum suddenly changed the name of his band "Lovespirals" to "Love Spirals Downwards" in 2025 and began to release new music, perform, and sell merchandise, under the "Love Spirals Downwards" name, seeking to capitalize on the success of the Band's success and good will and cause confusion for consumers who would mistake his new act with the original Band

9.    Further, to hide his tracks, Lum began editing Wikipedia and web sites and other online resources to remove references to Suzanne Perry, the original founding member of the Band who was nonetheless present on all of the albums released during the Band's career, in interviews, and listed as the vocalist and co-writer of nearly every song. Lum further crafted social media pages where he fashioned his partner in the band (and wife) to appear as if she were the original member of Love Spirals Downwards.

10.    Around 2025, Perry discovered that Lum had also been withholding master royalties and publishing income from the Band and had not accounted to or paid to Perry her 50% share of this income.

## II. PARTIES

11.    Plaintiff Suzanne Perry is Washington state resident. At the time of recording and releasing the Band materials, she resided in California it is where she served as the co-founding member,  only vocalist of the band (including appearing on all album artwork, promotional articles and materials, all social media, and all representations of the band as a duo), and contributed to all of the songwriting and recording of the Band's songs.

12.    Defendant Ryan Lum, is a California resident and the other founding member of the Love Spirals Downwards band and partnership.

3

COMPLAINT                                                          CASE NO. _____

13.     On information and belief, at all relevant times pertaining to the claims herein, Lum received funds and assets derived from the exploitation of the Band's copyrights and trademarks, and did not account to Perry for her share of these funds.

14.     The true names and capacities of Defendants Does 1 through 10, inclusive, are currently unknown to Plaintiffs.  Accordingly, Plaintiffs sue each and every Doe Defendant by such fictitious names.  Each Doe Defendant, individually and collectively, is responsible in some manner for the unlawful acts alleged herein.  Plaintiffs will seek leave of this Court to amend this Complaint to reflect the true names and capacities of the Doe Defendants when their identities become known.

15.     Plaintiffs allege that at all times relevant to the events giving rise to this action, each and every Defendant was acting as an agent or employee of each of the other Defendants.  Plaintiffs further allege that at all times relevant to those events, each and every Defendant was acting within the course and scope of that agency or employment at the direction of or with the full knowledge, permission, or consent of each and every other Defendant.  In addition, each of the acts or omissions of each and every Defendant was made known to, and ratified by, each of the other Defendants.

## II.     JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action because it involves ownership rights arising under federal law, namely the Copyright Act, 17 U.S.C. § 101 *et seq* and Lanham Act, 15 U.S.C. §§ 1501, 1121 *et seq*.  This Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it contains a claim for relief that presents a federal question, and pursuant to 28 U.S.C. § 1338(a) because the claim for relief relates to copyright and trademark rights over which the federal courts have original jurisdiction.

17.     This Court has supplemental subject matter jurisdiction over the remaining claims in this action pursuant to 28 U.S.C. § 1367(a) because those claims

COMPLAINT                                                                    CASE NO. _____

are so related to claims in the action over which the Court has original jurisdiction that they form part of the same case or controversy.

18.    This Court has personal jurisdiction over Lum because he has committed the acts and breaches complained of herein in California, and also has engaged in substantial and continuing contacts with California that make the exercise of personal jurisdiction proper.

19.    Venue in this District exists pursuant to 28 U.S.C. §§ 1391(b) and (c).

### III.    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20.    Love Spirals Downwards (the "Band") are a critically-acclaimed band that experienced commercial success in the 1990s, and have experienced a considerable resurgence in popularity. The Band released four studio albums, a career retrospective album, a live album, and appeared on numerous compilation albums, toured worldwide, and received critical acclaim from music publications.

21.    While the Band is not actively touring, they never formally broke up and remain popular as a recording artist.  The Band's recordings have been continually available,  distributed,  and sold worldwide via online digital service providers such as Spotify and Apple Music, and previously as CDs and vinyl records. They currently have an average of over 151,013 monthly listeners on Spotify, with one track reaching 3,640,507 plays.

22.    The Band was founded by Perry and Lum in 1991, where they jointly wrote and recorded their initial demos out of Lum's childhood bedroom. The two were boyfriend and girlfriend at the time, they would write and record the music together, with Lum playing the instruments (often layering several instruments over on a DAT) and Perry writing lyrics, vocal melodies and harmonics, and performing the vocals.

23.    Perry and Lum sent their demo recordings to a few record labels, one label responded, Projekt records, who indicated they were interested and requested

COMPLAINT                                                                    CASE NO. _____

more material, which eventually culminated in Projekt offering them a deal to release an Album.

24. Perry and Lum entered into an agreement with Projekt to release their debut album *Idylls* in 1992. Lum and Perry both appeared in multiple print interviews clearly identified as the Band members of "Love Spirals Downwards", where they discussed the formation, name, writing process, and beginning of the band.

25. They went on to release three more albums on Projekt: *Ardor* in 1994, *Ever* in 1996, and *Flux* in 1998. An EP titled *Sideways Forest* A retrospective compilation entitled *Temporal* was released in 2000 composed of prior recorded material, remixes, acoustic versions, and tracks that previously appeared on compilations and EPs by Perry and Lum. A live album of performances of Perry and Lum as Love Spirals Downwards from 1998  was released under the name *Live*  in 2014.

26. At all times, Perry was featured and promoted by Projekt as the vocalist and co-member of the Band with Lum. In fact, since inception, both Perry and Lum appeared on the Albums, as the Band was made up of two members exclusively, with limited guest vocalists invited by Perry (including Perry's sister).

27. Both Perry and Lum are credited on the Albums in the original liner notes and album artwork, with Perry often listed first.

28. The liner notes of the Albums also a statement on the album cover or liner notes similar to "all songs written and performed by Suzanne Perry and Ryan Lum.[1]"

29. The Albums list © Love Spirals Downwards, and (p) Serireenien Music, BMI. Seireenien Music was a publishing entity owned by Projekt that previously administered the publishing for both Suzanne Perry and Ryan Lum, wherein the publishing was split 50/50.

---

[1] One exception would be where the Band performed a cover song written by the Projekt records founder, but Perry is not claiming ownership of this composition, only the sound recording.

6

COMPLAINT                                                      CASE NO. _____

30.    Perry never assigned her copyrights, trademarks, or interest in the Band to Lum, or any other third party (subject only to the recording license to Projekt).

31.    Each member, Lum and Perry, contributed their individual efforts to the Band, with both members providing their image and likeness in connection with interviews and promotional materials for the Band, Perry providing vocal performances, writing vocal melodies, harmonics, and lyrics, Lum composing musical elements and recording with Perry, and both parties conducting interviews, public appearances, recording, and live performances. All of the individual contributions by each member to the compositions and sound recordings were intended to be combined into a unified work. Additionally, the profits and expenses of their mutual efforts in this endeavor were to be split equally at 50% amongst the Band members, forming a de facto partnership.

32.    Record royalties from all Band releases were split 50/50 between Lum and Perry, and paid 50/50 by Projekt. Income from publishing (compositions) was originally administered by Serireenien Music (Projekt) and split 50/50 between Lum and Perry.

33.    When they were actively touring, the Band split travel and touring expenses out of Band income, split rental of the space used to record the Band, and used royalties received from the Band partnership to pay for new Band equipment.

34.    At least one of the contracts with Projekt was signed by both parties as representatives of the Band and Projekt knew and understood that they were entering into contracts with a Band that was composed of Perry and Lum. Other contracts may have been signed by one or the other members of the Band but they were always in the capacity of the LSD partnership, and all royalties from every Album were paid out 50/50.

35.    There were no new releases or performances under the name Love Spirals Downwards after 1999 and the recordings have been continually distributed and exploited since their initial commercial release in various formats. Perry at no

7

COMPLAINT                                                        CASE NO. _____

time abandoned her claim or part in the partnership, mark, or Band Love Spirals Downwards.

36. In late 2025, Lum suddenly changed the name of his newer group (previously titled "Lovespirals") to "Love Spirals Downwards" after the original Band had some sudden renewed interest and Lum wanted to capitalize on the good will of the prior Band.

37. Lum re-released original "Love Spirals Downwards" albums with additional material, in some cases live recordings, and in one instance, he added a new version of a song where he re-recorded Perry's vocals with Anji Lum (his wife).

38. In 2026, Lum applied to register the trademark for "Love Spirals Downwards," application #99634558 in an individual capacity, and asserted sole ownership over the mark. Perry has opposed this registration.

39. To further his efforts to shut Perry out of the Band, Lum begin changing registrations on collection and performance royalty organizations (such as BMI, ASCAP, and the MLC) to remove Suzanne Perry, despite the fact that she had been clearly credited as a co-writer on every album the Band released and had been previously credited as a writer on these platforms and digital service providers.

40. Lum didn't stop there, he changed the Wikipedia and web site of the Band to attempt to minimize Perry's involvement and tried to erase her involvement in the band. Lum further removed references to Perry from the Band's web site, literally changing the written history of the band, deleting prior pages,  and removing photos of Perry.

41. Prior versions of the Band's official website and Wikipedia show the prior biographical information of Perry that has now been removed.

42. Lum changed the photo on the official artist Spotify account for "Love Spirals Downwards" to replace Perry with his wife and partner in "lovespirals" Anji Lum.

COMPLAINT                                                                    CASE NO. _____

43. To further add to the confusion and to erase Perry's involvement in the band, Lum added new versions of certain tracks on the album Flux to now be sung by Anji Lum. Perry did not authorize these derivative works.

44. Lum and his counsel doubled-down in 2026 when approached, claiming that he exercises sole control of the band, a claim that is entirely baseless when you consider that the new recordings and performances ceased in 1999.

45. Thereafter, solely to exert additional pressure on Perry, Lum refused to grant (without any valid basis ) his 50% share of the master/publishing on a synchronization license of "Will you Fade" to the film "Club Kids" at the Cannes Film Festival (now distributed by A24), as he did not want

46. Plaintiffs seek declaratory relief to prevent Lum from absconding with the jointly held copyrights and trademark of the Band, and further damages resulting from Lum's failure to account and pay to Plaintiffs for their share of such copyrights and income generated from the good will of the Band's marks, damages for Lum's breach of fiduciary duty as a partner, damages resulting from Lum's fraudulent application for sole ownership of the trademark, and restitution for sums unlawfully held by Lum to which Plaintiff is entitled.

.

## COUNT I – DECLARATORY RELIEF

(28 U.S.C. § 2201, *et seq*. and 17 U.S.C. § 101, *et seq*.)

### Declaration re Copyright Ownership

(Perry against Lum)

47. Plaintiffs re-allege and incorporate by reference each and every allegation above as set forth herein.

48. An actual, present, and justiciable controversy has arisen and exists between Perry and Lum with respect to the ownership and copyright interest in Band's master recordings.

9

COMPLAINT                                                                    CASE NO. _____

49.     Pursuant to the Federal Declaratory Judgment Act (28 U.S.C. § 2201) and Sections 101 and 201 of the Copyright Act of 1976, as amended (17 U.S.C. §§ 101 and 201), Perry seeks a declaration that Lum and Perry are joint authors and individual equal share co-owners of all jointly written and performed Band recordings (including the sound recordings and underlying compositions) including but not limited to those on the releases on the Albums (the "Band Catalog") and that Lum is barred by the doctrine of repudiation to dispute Perry's authorship as she has been openly credited as an author and member of the band since inception (since the 1990s).

50.     Perry wrote, performed,  and/or contributed to the writing and recording of all recordings in Band Catalog.  As a result, Band Catalog consists of "joint works" within the meaning of Section 101 of the Copyright Act, 17 U.S.C. § 101.  Copyright ownership vests initially in the authors of the work, and authors of joint works—like those in the Band Catalog—are co-owners of copyright in the work.  17 U.S.C. § 201(a).

51.     A copyright registration for the album *Idylls* was registered as PA0000596851 in 1993 with the authorship listed as "Music & arr.: Ryan Lum" and "words & vocal arr.: Suzanne Perry."

52.     Additionally, prior to filing this claim, Perry has submitted copyright registrations for the albums *Temporal*, *Live*, *Ever*, *Flux*, *Ardor*, and *Idylls*, and the *Sideways Forest EP,* wherein Perry and Ryan Lum are listed as co-authors.

53.     Until Lum's recent efforts in 2025, there has been no repudiation of Perry's joint authorship and ownership of the copyrights. Perry has maintained her credit and attribution on all Love Spirals Downwards works and the liner notes on all Band releases have continually listed her as a member of the Band and writer of the compositions and recordings since their original release until Lum's recent attempts in 2025 to remove references to Perry online.

COMPLAINT                                                           CASE NO. _____

54.    Defendant has wrongfully and incorrectly attempted to deny Perry's co-ownership of masters in the Band Catalog.  Lum has done so, on information and belief, to assert control over all revenues deny Perry her co-equal share of revenues.

55.    Perry therefore seeks a declaration that Perry and Lum are the joint authors and co-owners of those masters and compositions in the Band Catalog, each according to their pro-rata contribution thereto.

## COUNT II – BREACH OF FIDUCIARY DUTY

### (California Common Law)

### (Perry against Lum)

56.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 53 as set forth herein.

57.    The parties entered into the Band with the express understanding that the endeavor would be a business relationship and that profits and expenses would be borne amongst the members, and thus formed a general partnership.

58.    The partnership has conducted business since 1991 under the moniker "Love Spirals Downwards" on an international scale in the form of recording music, live performances, branded merchandise, and other live appearances.

59.    Projekt records has paid out record royalties 50/50 between Lum and Perry on every Band release since inception.

60.    The Band continues to actively draw over 150,000 monthly listeners on Spotify to enjoy its recorded music.

61.    Lum, a partner in the Band partnership, owes a fiduciary duty to his partners, including Perry.

62.    Lum, by the nature of his unique role in the partnership and his control over the finances vis a vis his re-release of Band recordings on his own and direction of all payments to himself personally, had a special role and responsibility to ensure

11

COMPLAINT                                                                 CASE NO. _____

the finances of the partnership were correctly gathered and distributed to the members.

63.    Instead, Lum funneled all of the income from the partnership to himself, without any semblance of accurate accounting to his partner.

64.    Beyond the master royalties, Lum further controlled sync income, merchandise income, other income that was also withheld, hidden, and misappropriated by Lum.

65.    Additionally, Lum changed registrations with collection agencies for Band Catalog compositions to incorrectly list him as 100% writer and he collected 100% of the income from these compositions without any accounting or payment to Perry.

66.    In violation of every fiduciary duty under California's RUPA of loyalty, to avoid self dealing, and duties to account to his partners; Lum engaged in self dealing by disproportionately redirecting the funds from the partnership intended for his partner to himself. Lum withheld accounting and financial information from his partner, and used partnership funds for his own personal benefit.

67.    As a result of these breaches of fiduciary duty, the Plaintiff was damaged in amount to be proven at trial.

## COUNT III - ACCOUNTING

(California Common law)

(Plaintiffs against Lum)

68.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 66 as set forth herein.

69.    As a result of Perry's status as a partner, joint author, and co-owner of the master recordings in Band Catalog, Lum is required by law to account to her for revenues, royalties received, and/or profits from the Band partnership.

COMPLAINT                                                                    CASE NO. _____

70. However, Lum has failed to do so and have actively concealed the true amounts owed to Perry. The precise nature and extent of revenues and royalties due to Perry are unknown to her at the present time, and cannot be determined without an accounting of Band-related revenues and revenues pertaining. Those amounts are only calculable based on documents and information in Defendants' possession.

71. Therefore, Plaintiffs seek an equitable accounting from Defendants for revenues, royalties, and profits pertaining to the Band partnership, copyrights, and other Band income.

## COUNT IV – DECLARATORY RELIEF of TRADEMARK OWNERSHIP

**(**15 U.S.C. §1051 *et seq.*, 28 U.S.C. §2201 *et seq.* and 15 U.S.C. §1125 *et seq.*)

(LSD Against Defendants)

72. Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through __ as set forth herein.

73. Perry and Lum formed the band "Love Spirals Downwards" in 1991, and created and established the initial uses of the "Love Spirals Downwards" mark in commerce in the form of recorded music, merchandise, and live performances.

74. While each member contributed her or his individual efforts to the Band, the formed the Band with continued purpose to create products and services and profits and expenses of their mutual efforts in this endeavor were to be equally split amongst the Band members, forming a de facto partnership, Love Spirals Downwards.

75. LSD began use of the mark in 1991 and continues to control and own the good will, services, and products that were initially developed to vest its ownership in the Mark.

13

COMPLAINT                                                            CASE NO. _____

76. Notably, LSD has limited the use of the Mark to the recordings and materials created by both Plaintiff and Lum through 1999, have continued to sell and exploit these materials, prevented others from using the mark, and these recordings have consistently been the only products for sale and available under the mark until Lum attempted to appropriate the mark for his own use in 2025.

77. All of the materials used by Lum to establish his registration in the mark were in fact evidence of the partnership's ownership – not Lum's.

78. The LSD partnership retained control over the associated trademarks, goods and services sold under that mark in the relevant categories, and no such interests were ever assigned or vested in Lum individually, who fraudulently registered this mark without the approval or knowledge of the partnership.

79. Perry and the LSD Partnership have filed an opposition to Ryan Lum's application #99634558 (wherein Lum's claimed sole ownership of the mark) before the TTAB.

80. Since 1991, every Album released using the Band mark featured Plaintiff and Lum as the sole members of the Band.

81. In spite of the fraudulent registration, the Band retains this control over the mark and does not permit other parties from using the name in the fields of recorded music and streaming music. Thus there exists an actual controversy between Lum and the Plaintiffs.

82. Lum has not, at any time, exercised sole control over the Band mark in any category, which was created by the Band and remains in the control of the Band partnership.

83. Plaintiff seek a declaration that the LSD partnership is the rightful owner of the "Love Spirals Downwards" mark.

COMPLAINT                                                                          CASE NO. _____

## COUNT V – FRAUD (TRADEMARK REGISTRATION)

### (15 U.S.C. §1051, 15 U.S.C. §1120, and 15 U.S.C. §1119)

### (All Plaintiffs against All Defendants)

84.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through __ as set forth herein.

85.     Lum made false representations to the USPTO when he represented and warranted his ownership of the "Love Spirals Downwards" mark in application #99634558.

86.     Lum used materials from the Band's initial use of the "Love Spirals Downwards" mark in 1991 to get his registration, materials that were owned and controlled by the Love Spirals Downwards partnership and Lum and Perry together.

87.     Lum knew this registration was false as he was claiming sole ownership yet he knew he did not have sole control or ownership over the mark either at the time of the specimens that were submitted or presently.

88.     Further evidence of Lum's fraud is that Lum first updated the Band website to remove references to Suzanne Perry and then altered Wikipedia articles under the moniker "Chillcuts" (the same name as Lum's record label) basing as a reference the newly altered Love Spirals Downwards website (which he himself had altered).

89.     Lum then removed all photos of Perry on the Love Spirals Downwards social media accounts and replaced them with pictures of his wife (and bandmate in lovespirals).

90.     Lum made the changes in attempt to re-write history knowing that they were false to support his fraudulent claim to the mark by removing established band history and decades long references to Plaintiff to make it seem that Lum had sole control over the Band, when in actuality it was always controlled by Lum and Perry as a partnership.

15

91.     Thereafter, Lum uploaded the "lovespirals" singles to the "Love Spirals Downwards" artist account on Spotify and Apple Music, listing them as "Love Spirals Downwards" releases without Perry's permission.

92.     Lum represented himself as the sole owner of the "Love Spirals Downwards" mark, Lum made these representations knowing they were false and supported by specimens that were not owned or controlled by Lum with the intent to deceive the USPTO so that he would be awarded sole ownership of the Band mark.

93.     Perry and the LSD Partnership have opposed Lum's sole registration of the Mark before the TTAB.

94.     The Band partnership retains this control over the mark and does not permit other parties from using the name in the fields of recorded music and streaming music.

95.     The Plaintiffs seek cancellation of Lum's registration and damages.

## COUNT VI – UNJUST ENRICHMENT

(California Common Law)

(All Plaintiffs against All Defendants)

96.     Plaintiffs re-allege and incorporate by reference each and every allegation as set forth herein.

97.     Lum has been collecting revenue for the Band recordings and publishing for almost two decades.

98.     During this time, Lum has engaged in an extensive efforts to hide his malfeasance and kept and retained the moneys that the Plaintiff would be entitled to as 1) co-authors of the copyrights, 2) partners in the Band.

99.     As a result of this unlawful retention, the Defendants have been unjustly enriched by in an amount to be proven at trial.

COMPLAINT                                                    CASE NO. _____

100.   Plaintiffs seek the imposition of a constructive trust to recover the benefits unfairly conferred to Lum arising from the Band and Plaintiff's recordings, publishing, and mark.

## COUNT V – UNFAIR BUSINESS PRACTICES

(Cal. Bus. And Prof. Code §17200)

(All Plaintiffs against All Defendants)

101.   Plaintiffs re-allege and incorporate by reference each and every allegation as set forth herein.

102.   Defendants' conduct as described herein constitutes unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200. Defendants' acts are unlawful in that they constitute breach of fiduciary duty, fraudulent, and have unjustly enriched the Defendant with moneys that rightly the Plaintiffs derived from Defendant's use of the Band marks and copyrighted material. They are unfair in that they undermine competition by erasing Plaintiff's name, reputation, and association with the Band. They are fraudulent in that Defendants misrepresented their sole ownership of the Band mark, and further altered the Band website, social media, and Wikipedia to remove references to the Plaintiff in attempts to erase evidence of Plaintiff's involvement in the Band -- that caused Plaintiff to act to its detriment.

103.   Plaintiffs seek all relief available under § 17200, including restitution, disgorgement, and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment against Defendants, and each of them, jointly and severally, as follows:

1.      For compensatory damages necessary to fully compensate Plaintiff for her injuries, according to proof at trial;

2.      For an accounting of Lum's books and Band-related revenue, profits,

COMPLAINT                                                                    CASE NO. _____

and any other exploitation of Band-related property,

3.      For punitive and exemplary damages as a result of Defendant's willful and malicious misconduct;

4.      For declaratory relief, including but not limited to declarations that (a) Plaintiffs are the co-equal joint authors and co-owners of the Band masters on which they performed, (b) Plaintiff and Lum are joint authors of the compositions they wrote, (c) Plaintiff Love Spirals Downwards is the sole owner and registrant of the Band mark,

5.      For injunctive relief, including but not limited to requiring Defendant to (a) appropriately account to and compensate Plaintiffs for past and future exploitation of Band-related recordings, compositions, and merchandise, and as otherwise required by law, (b) transfer possession and control of any and all websites, social media accounts, or other media in the name of or featuring the Band mark to Plaintiff Love Spirals Downwards, (c) submit accurate registrations for Band songs with applicable performing rights organizations (PROs), (d) Lum must cease and desist from his actions removing Perry as the listed author of the Band Catalog;

6.      For cancellation of Lum's TM application.

7.      For pre- and post-judgment interest in the maximum amount allowed by law;

8.      For such fees and costs, including reasonable attorneys' fees, incurred in connection with this action as permitted by law; and

9.      For such further relief as this Court deems necessary, just and proper, and that Plaintiffs may be entitled to at law or in equity.

18

COMPLAINT                                                        CASE NO. _____

Dated:  August 4, 2026

By:  /Ryan Powers/
Ryan Powers

*Attorney for Plaintiffs*

COMPLAINT                                                                    CASE NO. _____

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury for each and every cause of action so triable.

Dated:  August 4, 2026

By:   /Ryan Powers/
Ryan Powers

*Attorney for Plaintiffs*

=

---

20

COMPLAINT                                                                 CASE NO. _____